Welcome, everyone, to the Fourth Circuit today. We have just one case this afternoon, and the lawyer for Mr. Clarke is Mr. Dulligan. Sir, I look forward to hearing from you, sir. Mr. Dulligan May I please, court? The district court's decision in joining the state court needs to be reversed in this case because the director and the commonwealth have complied with the habeas judgment entered by the district court. Ms. Wolfe was both released from custody of the unconstitutional convictions and sentences and provided a new trial. There were no extraordinary circumstances such that the retrial itself would necessarily violate any of his constitutional rights. The only circumstances cited by the district court were unexhaustive claims arising after the remand, and nothing, in fact, is preventing a fair retrial from proceeding in the state court. Have the convictions been vacated by the state court? Mr. Clarke Convictions were vacated by the district court. The state court has accepted that and treated them as vacated. Has the state court ever entered an order of any kind vacating the state conviction? Mr. Dulligan Separate order of its own? No, Your Honor. Mr. Clarke Okay. But it would have been unable to enter the orders it did unless the convictions were, in fact, vacated. If the convictions were still in force, it could not have set trial on the indictment as outstanding. It could not have appointed counsel. It could not have proceeded forward at all if there were still convictions against Mr. Wolfe as a result of the prior state proceedings. In every one of its orders since September 7th of last year, the circuit court of Prince William County necessarily has treated those convictions as vacated. I just wanted to look at this thing, getting ready for coming down here, whether the habeas court really had any authority to vacate under federal habeas corpus law the convictions, whether that's a step that needs to be taken by the state court itself rather than the habeas court. Initially, this thing said they were vacated and it was sent back to the Supreme Court. I mean, it talked about being vacated, but I was just wondering, I looked through here and I couldn't see whether the state court had ever entered an order vacating it. My knowledge. I mean, what we did is we affirmed it all and agreed on the Brady point, on the Newsom thing. Yes, Your Honor. I didn't mean to interrupt you there. No, certainly. Off the point. I'm happy to address any questions the court has. The writ, typically the amended writ entered by the district court in August, really gave the state director of Department of Corrections no choice but to release him once the mandate of this court took place. It was not a conventional conditional writ, but the more I reread it, it, as the court pointed out, stated that the convictions and sentences were vacated. And then it went on in the following clause to say that Wolf would be provided a new trial within 120 days or released. But once the convictions and sentences were vacated, the Department of Corrections in Virginia had no further authority to maintain his custody. But he's still in custody in Virginia. He is not in custody as a result of any of the unconstitutional convictions or sentences that the district court and this court found. Well, I'm not so sure of that. If they hadn't been vacated by the state court, maybe they are, maybe he is in custody under them. He's in custody according to the state court's understanding. I don't argue about that, but I'm not sure it makes any difference here. There's a separate indictment now with new charges, is that right? There are more than one. There are additional indictments, yes. And what are the additional indictments and what do they charge? The additional indictments charge the operation of a continuing drug enterprise as a drug title violation. There are two charges depending on the amount of the transaction involved. They're mutual charges. There's a charge of capital murder as murder occurring at the direction of a principal in the drug enterprise. Is your response to the question, I think that initiated this line of questioning, that the custodial transportation order was pursuant to the new body of indictment? No. The custodial transportation order entered in September was pursuant to the 2001 indictments, the trial proceedings that were the challenges and the habeas. So when the convictions were vacated, the indictments were still outstanding and he was arrested on the outstanding 2001 indictments in September. The new indictments came in October. Did they supersede? No. They are independent charges. Newman has a capital murder charge. That's a different capital murder charge? Different capital murder charge. The capital murder charge. Different victim? Same victim. How many times can you murder somebody? The unit of prosecution under state law under the capital murder statute is the circumstances leading to it. A different theory? Yes. So the 2001 indictment is still pending? Yes. So if he went to trial, a new trial would be for two separate murder charges, one a different theory than the other or a lesser offense or something? They're both capital murder charges and both, at least potentially at this point, would carry the death penalty. The capital murder charge indicted in 2001 was capital murder by hire that Mr. Paul Depp threw here, a murder for hire charge. Yes, Your Honor. And then there's a murder in the course of a continuing drug enterprise. That's the new one? That's the new one. Okay. Could I just clarify? And there's also a felony murder, which is a lesser offense. So in response to the question about the unconditional release, explain again your characterization that he is no longer in custody on the state charges? He's no longer in custody on what this court and the district court found unconstitutional, the convictions and sentences that were imposed in 2002. Those convictions and sentences have been vacated. He's in custody on the outstanding indictments that remain intact after the convictions and sentences were set aside. And so he's in custody as a pretrial defendant, the same as anyone who's been indicted by a grand jury and not on any constitutionally infirm action of conviction or sentence that this court and the district court set aside. And that's why we contend that it's unconditional. There are no continuing conditions, consequences, or results from the actions that were found to be unconstitutional, the convictions and sentences in 2002. Those are gone. His only custody is as a pretrial defendant. If he had qualified for bond, he'd be out on bond. The state court held a bond hearing and found he didn't qualify for bond. That's the only thing that's holding him in custody now. So as far as the purpose of the writ. He doesn't qualify for bond because of the murder in an ongoing criminal conspiracy? There's a presumption under the state statute that conditions of bond would not satisfy depending on capital. But under the state statute, the court is also required to consider whether that presumption is rebutted and consider his flight risk and other characteristics conventional bond hearing. But the 2002 convictions are gone. There is no continuing effect. They're gone, but you told me before the state court has not entered an order vacating them. And it seems to me that would be a predicate to them being gone. That, as the Fisher court put, would be a cleaner procedure, perhaps. But it's sufficient, we argue, that the state court has, in all its order, has treated them as if they're de facto gone, in a word, yes. But you are still attempting to retry him on the 2002 convictions as well as the new indictments, right? He's facing retrial on the 2001 indictments and on indictments returned last October. So how many outstanding indictments are there? Putting them all together, four, five? Three from 2001, I believe. I didn't look at this recently, but I believe there are five from October of last year for the two-drug enterprise. That would be five new ones then? Yes. Two-drug enterprise, the capital murder and conviction drug enterprise, a felony murder, and related use of firearms. And how many from the three in 2001? Three old ones. The murder for hire, the use of firearms. So there's eight all together? If my count from October is correct, yes. And it's your proposition that you can retry them on all eight of them? That's how it was scheduled in the circuit court, yes. And right now, there is no trial date or there is a trial date? There's no trial date. The circuit court had a status conference on the 16th of this month. The result of that was to schedule a subsequent status conference in March. There's no trial date at this point, correct? Yes. The writ in this case, it's the director's contention, afforded Wolf, in fact, all the remedy that he could have had under an absolute writ once it did, in fact, vacate the convictions. It's a connection of the director that he's also released from any custody of the convictions in compliance with the first half of the conditional part of the writ, and that the Commonwealth has indeed provided him a trial. But the critical part was the first part. Now, when you say writ in this case, you're referring to what? The amended order? The August 2001 amended judgment. The amended judgment, okay, of August 30th? Yes. Right, 2001. Which the district court characterized as a conditional writ. Yes, and it does conclude with language common to most conditional writs to trial release. But since it starts with an order that the convictions are vacated, it's a little bit unusual as a conditional writ. The conventional conditional writ we usually see are release or retry, and this is vacate, then release or retry. I understand. That's what I was getting at earlier, and you all litigated this while the thing was on appeal. He entered an order, what, a month before that, or more than a month before that, that you took an appeal from, and then you filed a notice of appeal, and then they came in and you all argued about getting an amended judgment, like under Rule 59E. And now you're saying they still got it wrong, right? Mr. Wolfe moved for 59E on the basis that the original. You all participated in the procedures. Yes, Your Honor. The issue Mr. Wolfe raised was that the original writ referred to a singular conviction, which he understood. And it referred to a remand to the Supreme Court of Virginia, the original writ. Yes, Your Honor. And they said that was wrong, and you agreed, didn't you? That a remand to the Supreme Court of Virginia was not procedure. Yes, Your Honor. We agreed with that point. We disputed whether the other conviction should be set aside or the district court ruled against us. But then you got an amended judgment and filed a new notice of appeal. Yes, Your Honor. And then you came up here on the appeal, and nobody raised any issue concerning the nature of the relief. I believe that's correct. Pardon? I believe that's correct. You contested on the merits, which you had the perfect right to do. But the stuff we're talking about now,  I believe you're correct, Your Honor. But the point to this point, where the only issue before the district court was whether we've complied with that writ, is that we have. The convictions stand vacated. He is released from any custody based on the unconstitutional conviction. I'm not sure that's the only issue before the court. I mean, I hate to interrupt you again, but even if he didn't comply with it, there'd be an issue about whether the relief's appropriate. If we didn't comply, yeah. If we have complied, then that's the end of the analysis. That's right. But if you haven't complied, or if we assume you haven't complied, then there's a question of whether the relief that's accorded in the, what's that one called, the order enforcing judgment, is the appropriate relief. And as to that, Your Honor, the district court itself acknowledged that if our only error was either not, in fact, releasing him unconditionally, or miscalculating the 120 days, the remedy would be a release subject to rearrest and retrial. The only distinction the district court made from that remedy and what it entered was that it found what it called extraordinary circumstances in the conduct of the prosecutor after the mandate of this court had already been entered, in the retrial proceedings. That was never part of the claim in the original habeas case, and the original habeas writ never barred retrial. How many of these extraordinary circumstances were identified? Was there three or more than three? I've got three in mind, but I want to see how many you think there are. Mr. Wolfe, in his briefing, has identified multiple misconduct claims with the extraordinary circumstances in the district court's injunction. My reading of the injunction identified only one, that the interview on September 11th wrongly led Mr. Barber to assert his Fifth Amendment privileges. Is there still an ongoing ethics investigation before the Virginia Bar for the first prosecution? I think so. Those, of course, are confidential. All that comes out in public are what the parties may choose to release and what they've released at this point are the responses that have been filed. I'm not aware of any resolution of that at this point, so I would have to assume it's ongoing, but I don't know as a matter of fact. But there are two critical points, well, several critical points, extraordinary circumstances, if I back up a moment. First is that these extraordinary circumstances, unlike all the other cases that have been cited here, are alleging circumstances that occurred after the mandate had from this court and circumstances that are not part of the original relief sought. And the other extraordinary circumstances case is that the situation where, for one reason or another, a fair retrial is simply impossible because of the nature of the habeas violation, that trial violated triple jeopardy, that the trial is a violation of speedy trial, that the action under which the prosecutor was unconstitutional. But it's impossible to have a fair retrial. But isn't that, in essence, doesn't that underlie what the district court found? And the district court was concerned, was it not, that the interview with Mr. Barber was an attempt to render him unavailable? That's what the district court was concerned about. We argue in our briefing here that that's an improper concern, both because that's never been part of the habeas case. It is not a claim that they've continued in persisting in the Brady violation that this court found or in the Giglio. It's an unrelated claim. It's a due process claim in the district court's own injunction. It speaks to the point you were making about being disqualified as an extraordinary circumstance because it occurred post-mandate. The concern that the district court was articulating would have been, as he viewed it, an attempt to affect proceedings going forward. But the critical part about being a post-mandate is not only was it not part of the habeas petition that was filed, but it's never been a matter that the state court has yet weighed in on, or the last resort or even the trial court. Excuse me. What is the it? What was the subject? The allegation that there was misconduct that led to making Mr. Barber unavailable. In that interview? In that interview in September. What, the 12th of September? The 11th, I think. The 11th of September, yes. And that is the subject of a motion that Mr. Wolf has filed in the state court, the Commonwealth CERN special prosecutor has responded to. There was some evidence taken on that, and the disposition was continued over, in part because the circuit court judge, the state trial judge, found that it was not yet properly before him. Mr. Barber had not, in fact, refused to testify at this point. And since then, the state prosecutor has said that he would offer use and derivative use of full CASCAR immunity for Mr. Barber's truthful testimony on behalf of Mr. Wolf. The point is, those are retrial issues that have to be decided. I was thinking of the interview, or the meeting, or whatever it was, that recording, and the assertion of the Fifth Amendment, in quotes, whether it was a proper assertion or not, as two different things. Maybe, and you said there was only one thing. You're just tying them together. Well, I think that was the district court's reasoning as I read the injunction, that what it found improper about the interview was that it, in the district court's words, scared Mr. Barber into asserting his Fifth Amendment privilege. I don't think, frankly, that the district court has ever, or Mr. Wolf has ever, found that Mr. Barber's assertion of the Fifth Amendment privilege is itself in error. He, in fact, does have a risk of prosecution for perjury, and does, in fact, have a risk that he breached his plea agreement. Whether he testified falsely in the state trial or the federal court, either way, he faces those risks, and he would have a basis to assert his Fifth Amendment rights. It's never been contended that his assertion of the Fifth Amendment privilege is frivolous. But your point is that that's a matter for the state court to deal with in the first instance. Yes. In connection with the retrial proceedings, and that that would only get back to the federal court after it had been exhausted in the state court system. Exactly, both because of federalism concerns in allowing the state court to make this decision first, and because the state court, as the trial court, has a much better arsenal of ways to deal with the problem. The district court felt, apparently, its only remedy was to bar prosecution. The state court has already discussed on the record in January, the special prosecutor has stated for the record, that he will offer use and derivative use immunity. The district court assumed that when? He stated that January 2nd of this year. That was after the district court ruled. It was after the district court ruled. Okay, that's post-judgment here that we have on appeal. But the district court's ruling was in May. Is that in the record here, or are you just making this up from something out of the newspaper? No, it's in the status report. It's in the status report. Okay. But the district court did not find that immunity had been refused. The district court in the footnote simply found that it thought it was unlikely that the special prosecutor would grant sufficient immunity that Mr. Barber could testify, despite his Fifth Amendment concerns. Well, immunity can't be refused, I don't think. If a court gives somebody immunity, they can't refuse it, can they? No. At least they don't in the federal system. The immunity a special prosecutor is offered would be sufficient to compel Mr. Barber to testify despite his claim of Fifth Amendment immunity. How do they get immunity in Virginia? Do they have a statutory system? There are statutes that cover it. The judge? There are statutes that cover it in specific cases. In this case, it was a representation on the record by the special prosecutor and be entered by order. That can be refused. But if there's a statutory system, the defendant can't refuse it. I mean, the prosecutor can just say, I'm going to give it to you, but that's unofficial immunity, we used to call it. Well, it would be pursuant to an immunity agreement. Once it was accepted by the court, it would compel his testimony if it was found to be sufficient immunity, and the property he's made is use and derivative use immunity. But the point with respect to the district court's judgment, though, is there was no evidence at the time it ruled whether or not he would offer immunity. The district court assumed it was, I think unlikely was its term, that immunity would not be offered by a special prosecutor. The district court itself did not find that a fair real trial was impossible. But there was also a statement somewhere in one of these briefs or something that the immunity proposal from the prosecutor was going to be contingent upon him telling a particular story. A particular version that favored the prosecution. And that's not appropriate for a prosecutor to do. That would not be appropriate, that's not what the prosecutor said. He said he would offer him immunity, but for what? For his truthful testimony. But there was only one version of that that could come out, according to him. You go right ahead there, as long as we're asking questions, you can answer. Thank you, Arnold. But he didn't condition it on giving testimony that the prosecutor thought was truthful. It was simply a truthful statement. I've never known any prosecutor to offer immunity for perjury. Right. But here this fellow is testified under oath to stories that are 180 degrees apart. And the prosecutor's offered him immunity. Is it an unconditional offer? He gets up there and tells what he says is the truth? Or is it going to have to tell the prosecutor's version of the truth in order for it to work? He's going to have to tell the truth. It will be subject to trial court judges' enforcement. If the trial court judge believes he has perjured himself, for example, by telling a fourth or fifth story unrelated to anything he says, See, the story he told in the district court, Judge Jackson credited. The story he told in the trial court at the time of the trial, the jury credited. Yes, Your Honor. So you've got two different versions that have been credited, and, of course, the story that he told in the trial court was before this piece of Brady evidence was disclosed. So you've got that color in the thing, too. But he has told two different stories under oath without question. And your thing about the immunity, at least what I've heard or read here, was that the prosecutor was hedging his bets. And that's the characterization Mr. Wolf has given. And I'd argue, Your Honor, that what he said was it was for his truthful testimony. What that means is that the— I'm sorry. Within the first few minutes of that interview with Mr. Barber in September 2012, he reiterated to the former prosecutors that what he had testified to in federal court was the truth. And then they went on for two more hours. Including statements to Mr. Barber that if the truth is that Wolf had nothing to do with it, tell us that. And he told him that in the first few minutes. Well, he alluded to his federal testimony. He never made a further statement in that interview that I recall. In fact, what happened, he said which testimony he would repeat. But the truthfulness required for the immunity agreement, once the agreement was entered, would not be under the unilateral control of the special prosecutor. It would be up to the trial judge to determine if Mr. Barber had been truthful and complied with the terms of his immunity agreement or if he had committed perjury anew. It's not something that the prosecutor can say based on his investigation. He believes a certain course of events happened. Mr. Barber testified differently, so I'm withdrawing immunity. Once it's entered, once it's offered and accepted, the agreement is subject to the control of the trial court, not the prosecutor. I've gone over my time. You've reserved some time. Yes, Your Honor. We appreciate it. There's no other questions. Thank you. And we have Mr. Parrish. Yes, Your Honor. Thank you, Your Honor. Ashley Parrish for Justin Wolf. What I think might be helpful with the court's indulgence, I'd like to do three things today. I'd like to start off making a couple of overarching points that I think will frame the rest of the discussion. Second, I'd like to explain why they did not comply with the conditional writ, why more specifically they have not shown that the district court abused its discretion in its interpretation of that writ, and lastly, why there's no possible way they can actually properly argue that they've unconditionally released Mr. Wolf at this point. And then lastly, Your Honors, I'd like to focus on the extraordinary circumstances. I'd like to put that in context, but I'd really like to do three things. First, explain why there's a very close inextricable nexus here between what's happened in the retrial proceedings and what happened at the habeas judgment. Second, I'd like to address this point that the opposing counsel has made about that the test is impossibility of a new trial. Even the precedents they cite in their brief did not support that statement. And third, Your Honors, I'd like to explain why this argument about immunity does not work. I'll get to the gist of that, but Judge King, I would notice that you used the word unconditional immunity, but let's all remember they have a different understanding of unconditional than we do here, and I'd like to explain how that also applies in the immunity. You have a different understanding than Judge Jackson? I have exactly the same understanding of Judge Jackson, Your Honor, which is that unconditional meant unconditional. The unconditional writ, he says, in this circumstance, will not itself generally preclude the government from re-arresting and retrying the prisoner. Your Honor, I think this is Judge Jackson applying the law absolutely correctly. There are two issues that I'd ask the question. But you agree that that's the proper interpretation? No, Your Honor. If there is an unconditional writ, the government can re-arrest and retry the prisoner. Your Honor, if I may address that by just stepping back. Did you say yes or no? No, Your Honor, but that is what Judge Jackson said about the relief. You can say no to my question, or which one are you saying no to? Your Honor, unconditional release does not allow them to re-arrest. But let me explain to you. Okay, but Judge Jackson says in his opinion, or the order enforcing the judgment, he says that. Your Honor, he does not. Let me quote that. Your Honor, let me address that because I know exactly what you're asking, and I've got an exact answer for that. There are two things that Judge Jackson is doing. In the absence of extraordinary circumstances, that's the law. Yes, Your Honor. Let me say there's two things. There's one question is what did he mean by unconditional release? And earlier in his opinion, he says, when I meant unconditional, I meant absolute, you cannot re-prosecute. But then he gets to the second part of his analysis and says, if there's a violation of the order, what's the proper remedy? And what Judge Jackson is saying in the passage that you read, is that even if there was a violation of the order, he did not mean that that would necessarily mean that unconditional release would be appropriate absent further extraordinary circumstances. So what he does is he first gives the Commonwealth a choice, which underscores our reading of why his conditional writ makes sense. Commonwealth, you have a choice. You can either retry him within 120 days or nothing else. You unconditionally release him. The Commonwealth has now decided to retry. Did he vacate the conviction? Your Honor, he did say that he vacated the conviction. Well, did he vacate it? Your Honor, this is what I would say. First thing you ought to learn coming up here, you need to answer the question. Your Honor, the answer is he ordered the convictions vacated. Did he have power to do that? Your Honor, yes, he did. But let me make our point that we make in our brief, which is that there are two issues that are going on here. One question is what could the state court do in light of Judge Jackson's order? And the second question is are there formalities that would require the courts of appeal or the district court to say that he'd lost jurisdiction? And our point is to the extent the Commonwealth wants to rely on the formality that there's been a release, they also have to take with that the other formalities that are required. The Sixth Circuit has made clear that those formalities are a vacater that occurs at the state court level and that it extinguishes all of the collateral consequences. And the Sixth Circuit has made clear in its Groggy decision that the state has to come forward and bear the burden of showing those collateral consequences have extinguished. So, Your Honor, to your point, I do believe that Judge Jackson properly ordered that the convictions were vacated. But the question as a matter of formality is does that mean that the Commonwealth is satisfied by saying that they've released him by transferring him from one subdivision to another? The answer to that is no, because we're in this world, if they think that the Sixth Circuit pressed them in controls, we don't think they're reading it correctly. But if they are, they're applying formalisms, and if they're going to take some of the formalisms, they have to take all of them. If I may, though, let's... Do you plan to talk about the commencing retrial within 120 days? Absolutely, Your Honor. Absolutely. Your Honor, maybe that's a good place to go, because I do think it highlights, again, why our reading of the order is correct and why Judge Jackson's reading of the order is correct. Again, step back. I think what Judge Jackson intended in light of the extraordinary circumstances that existed on the first habeas hearing was that he said, look, there is a prisoner here who I have adjudged to be actually innocent for purposes of sloop. There's been extraordinary misconduct. Actually innocent? You throw that out around there a lot, too. You start off one of your briefs with that. And the Herrera claim was abandoned. Your Honor, you're absolutely correct. I'm absolutely correct. The sloop claim is the gateway claim. Yes, you're right. That's right. There's been no finding of actual innocence in this case. Your Honor, under sloop, in order to make a gateway showing... Make enough of showing to open up to other issues. Your Honor, the judge needed... The Herrera claim is the actual innocence claim. Your Honor, you're absolutely correct. I don't want to waste your time on that, but I think you're hurting yourself by trying to get into that. But Judge Duncan wants to get at that 120-day claim. Right. Absolutely, Your Honor. But let me make the point that the district court here issued a specific conditional written that was specifically worded in light of the findings that he had made, both under sloop and in terms of prosecutorial misconduct. You're talking about the amended... The amended order. The judgment of August 30, 2011. Yes, Your Honor. On the Rule 59E motion. Exactly, Your Honor. And what that did is, among other things, it specifically said that the Commonwealth shall provide Mr. Wolf with a new trial within 120 days or unconditionally release him. Now, the first order didn't say anything about 120 days. It's the first order that was appealed from. That is correct, Your Honor. So the 120 days popped into the middle of this appeal after the case was in the Fourth Circuit. Well, Your Honor, what happened is that there was a motion to clarify and there was an amended judgment. The Commonwealth appealed both, and when it came up to the Fourth Circuit, the amended judgment was the judgment that was properly before the court. No, but the amended judgment came out after the notice of appeal. The notice of appeal normally takes the case from the district court and puts it in the circuit court. That is correct. The district court. So while the case was up here, you made a 59E motion, which you had a right to do, and you got the thing amended, and you got it put in there, but they weren't sending it back to the Supreme Court of Virginia, and you put in there, among other things, 120-day rule. Judge Jackson did that. 120 days from the date of this order, which was already, or the appeal was already pending. So in the middle of the appeal, you interposed 120 days. They got a trime, or else, as far as you're concerned. That is? So they would, under your interpretation of the rule, they had to trime from the entry of the amended order on August 30, 2011, within 120 days, which would deprive them of their right of appeal. No, Your Honor. Your Honor, the way that the federal rules work is that a order from the district court becomes effective when it becomes effective, even if you appeal. The exception to that is if you go and ask. The case was already on appeal. Your Honor. It was already on appeal. Your Honor, they filed a notice of appeal challenging the first judgment. There was a motion to clarify, as you said, we were entitled to do that. The district court clarified his judgment. You're entitled to do that. You got it. They filed a new notice of appeal. That's the question, then, what the effect of it was. Yes, Your Honor. I agree. Now you're going to have to hear 120 days. And the fact that the order required that the trial be provided, just provided within 120 days. Yes, Your Honor. So if Your Honor's question is does provided mean that it has to be started or whether pretrial proceedings were sufficient, I think the answer to that is a couple of things. One is that this court itself, in its decision, interpreted provide a new trial to mean retry within 120 days. And what precedent are you referring to? In the opinion that this court issued affirming the habeas judgment, as the court described the requirement, it described it as the district court directing the Commonwealth to retry within 120 days or unconditionally release. And the reason is that the court read it. What I'm asking was what constitutes providing Wolf a notice, providing Wolf a trial within the allotted period. Yes, Your Honor. And the answer to that is that they have to start a trial. They have to at least start a trial. They can't start pretrial proceedings. And, Your Honor, that is how they interpreted the order when they went back to the state court because they asked for a continuance. Okay, perhaps my counting is wrong, but I thought that they had set the trial to begin on October 15th. They did, Your Honor, and then the state came back and at that point asked for a continuance, recognizing arguments that they've now tried to raise now, but they recognized that they needed to comply with 120 days, and they did not make the argument that he was released, but what they disputed was whether the 120 days ran from the time of the mandate or whether it counted the time that had run during the state. And when the state asked for that continuance, did you oppose the continuance? Your Honor, we opposed the continuance on the grounds precisely that we thought it violated the district court's order. Well, did you object to the district court taking 84 of those 120 days in the motion? Your Honor, we didn't, although I don't think it was so fair to say it was the district court. One of the reasons it took so long is because of the, they had to hold a hearing on the fact. And that's where, I mean, that's, that's sort of my point to the extent that any of this is within anybody's control. It would seem to be when the trial date, the process starts. It doesn't say that the process has to be completed. What I'm asking is, aren't you reading things into that order that aren't specifically there? Your Honor, I would say that the reading that the Commonwealth gave to the order, which it means it needed to start the reading that this court gave to it in its opinion, which said it needed to have the retry within 120 days, the reading, the district court gave to it and the reading we give to it all. However you say start or complete all preclude the argument that only start or complete, but that keeps that, but your Honor, but my point is to provide a new trial cannot mean initiate pretrial proceedings. With this provide, I would reasonable person could mean that means exactly a jury verdict. And your Honor, reasonable person could also read it the way the district court did, which was to say that it must mean that they have to at least start or be completed. And the district court has a discretion on that. Well, your Honor, what it means is that I think it is clear in the district court was very clear. I think it's clear because even a reasonable person might read it. It means 120 days to the date of our mandate. Well,  I don't think so because the district court's orders come up here and ask me and you didn't come nobody, none of you went back and ask judge Jackson and he didn't come back and ask us if he, if he had to come up here and ask me, I'd probably said it means 120 days from the mandate. Well, your Honor, two things that if you, because, and I would have been strongly impressed by the fact that this 120 days came up in the middle of the appeal. Your Honor, if you wanted to do that, you could have rewritten judge Jackson's order, but your Honor enticed the, or you all didn't raise any issue about it, but your Honor,  in the first appeal. Absolutely. That's right. Nobody did. They weren't talking about remedy in the first appeal where they were talking about the merits, which they had a right to do was their appeal. And your Honor, they could have talked about that, but so, which is why they waive their, but when they say providing a trial, the reasonable reading of that is you say it means begin the trial, but a reasonable reading. Isn't the trial has to be completed. You're on. Let me be very clear about what my position is on this. One is that the Commonwealth itself agreed with us when they went back to the state court, but it meant something more than initiate pre-trial proceedings because otherwise they wouldn't have asked for the continuum. They, they, and they, and they made some representations to the state court judge that they were willing to take your reading of it, but for purposes of scheduling, that's how they got to that October 15th date. And after that, your Honor, they asked, they filed for continuance, disagreeing with our readings, saying that the 120 days ran from the mandate. But at that point, they agreed with us that a Mr. Wolf had not been released and that B, he hadn't been provided a trial. At that point, because otherwise they wouldn't have asked for a continuance. So I could, you're on my point, but assume, let's listen. Why don't we, well, you're doing whatever you want. You got a lot of time here, but I think if we could, if we assume you're right on the 120 days, what justifies not giving them a trial? How can you sustain that? The federal court telling a state court that it can't try a criminal case. That's about the ultimate exercise of power by a state court, by a federal court, trying to stop a state criminal trial. Your Honor, I agree, and it should only happen in circumstances where there's been a violation of the conditional writ, which we think we satisfied, and when there has been extraordinary circumstances. Which is what we were talking about earlier. Which is what you want to get to, and I'd like to turn to too, but let me emphasize about this case, if you take a look at all of the cases that have been cited, all the cases cited by the Commonwealth, all the cases cited by us, there has never been a case with this type of misconduct when you take a look at the totality of the circumstances. But do you get, and I guess this gets back to another point, what we're talking about is an order that came up after the writ was granted, correct? So when you say the totality of the circumstances, are you taking into, you have to be taking into consideration, trial misconduct. Your Honor, I take into two things. I mean, that really was a yes or no question. Are you, yes, you're saying that, so we're going back and importing into this analysis, the Brady violation that justified the grant of the writ in the first place. Yes, Your Honor. Although, let me make sure that I understand your question, which is that if you're asking, are we looking solely at the violations that occurred before? No, but am I saying that there is an inextricable link? That wasn't my question. Okay. I was asking when you were talking, I'm trying also to understand extraordinary circumstances that justifies a federal court telling the state court that they cannot criminally try a citizen. Yes. And you are saying that the extraordinary circumstances that justify it include the trial misconduct that predated the issuance of the writ. Yes, Your Honor. Even though that, that prohibition was arrived at ostensibly as a result of post trial conduct. Your Honor, I think, are you, do you have to go back in order to find extraordinary circumstances? Your Honor, you don't have to go back. But what I'm, what I'm saying, I guess I'm making three points here if I may. One is that the violations that have occurred, the continuing violations are so. Continuing violations? Yes. There are continuing Brady violations? Your Honor, so let me give you an easiest example of this. The district court made a factual finding in his original habeas judgment that Barbara's testimony was false. And that provided the predicate for his Giglio and due process violation. Now, the prosecution has gone back to Mr. Barber. I think you said, you said it was false. I think you meant to. Is that what you meant to say? Barbara's testimony is 2002 trial was false. Oh, okay. And, so you're talking about his hearing test. No, no, Your Honor. In the 2002 trial, Barbara's testimony was false. That was a finding by the district court. That remains a finding of the district court. The prosecution has now gone back and attempted to threaten Mr. Barber to do the same testimony that was found by the district court to be false. So, Your Honor, the reason I say that there's a link is that what the Commonwealth wants to do is something that's very circular, which is that the way they set this up by eliminating Mr. Barber as a witness by preventing us from being able to cross examine. Are you referring now to the immunity? Fifth Amendment discussion? Well, Your Honor, I'm referring to the Fifth Amendment. Is that what you're talking about? The Fifth Amendment. Yes, Your Honor. So, I guess everyone has a fair sense of the tape, and I take your characterization that you thought that there was, there were threats there, but it does seem to be, at best, a question that's open to some debate. Your Honor, there may be a debate that we could have as to how, how strong the threats were. So, the one thing we can have a debate on is that the prosecution's directly urged Mr. Barber to testify falsely. There's no way of reading the transcript the other way, and since it's very clear that the prosecution at multiple times says, Mr. In the interview, you're saying in the last interview. In the last interview that occurred on September 11th. And so, your extraordinary circumstance is essentially that interview and what you identify as its linkage to early on. Exactly. Your Honor, it's that interview combined with the Giglio and Brady violations before. If we didn't, if we didn't combine it with the Giglio and radio, but Brady violations before, would you still say it's extraordinary? How is it still extraordinary standing alone? Your Honor, if your question is just the fact that they went down there and threatened to him, I think it really is the fact that the district court found the violations before that makes it truly extraordinary. And that's essentially my question. Yeah. Can you have, can you predicate extraordinary circumstances? And I think you're saying no, although you keep moving around on it. Your Honor, what I'm, what I'm saying is, is that the interview itself is made extraordinary because it directly flies in the teeth of what the habeas judgment was in the first instance. Okay. As you characterize it. But, but, so you're just. But Your Honor, I don't, what I guess where I'm grappling with you is that I don't think there's any way to characterize it other than flying in the teeth. We could debate as to how aggressive it was or how extreme it was in the context of had there been no violations. But once the district court made a finding that Barbara's testimony in 2002 was false, it is extraordinary conduct for prosecutors to urge a witness to engage in exactly the false testimony that he was granted. The jury back then found that it was true. That is true, Your Honor. But that's why you have a constitutional habeas process. I thought the judge said that he credited his testimony at the hearing. Your Honor, which is contrary to it, but the jury credited his testimony in the trial. Because Your Honor, the jury did not have the Brady evidence before them. You know, do we give credit to juries around here too? Well, you can't, Your Honor, when there's been a Brady violation. Well, there's a Brady violation. That's it. And the relief accorded to him as a result of the Brady violation was a writ to get him a new trial. Exactly, Your Honor. And once they didn't do that, the court had jurisdiction to look at what was happening. And what they've done is they've replicated the violations that the habeas judgment was designed to remedy. That's an extraordinarily broad characterization that I'm not sure is supported by the case. Well, Your Honor, I think, let me go specifically what it is that they've done that's the same. And then I also, I understand your position, but I think it also highlights the difficulty that I'm having. And that is, it's arguable that Mr. Wolf has received the relief that he sought, which was a new, which I thought was going to be a new trial. But now we are looking at the possibility that he won't be retried because of these extraordinary circumstances, which is solely the interview with Barbara in which I'm not sure that it's fair to characterize what the prosecution did as urging him to testify falsely. Your Honor, with respect, I think when you read the transcript, there are several places in the transcript where they specifically ask him to revert to his 2002 testimony. I don't think there is any way that's our solution. They said they believed him in 2002. I know, Your Honor. But once the district court made a factual finding after they can't disagree with the district court, they agree with themselves and they agree with the jury. I mean, Your Honor, with respect, the point of the habeas proceeding was to find that the jury's verdict was not entitled. We gave him a new trial on the basis of the Brady violation on the Newsom report. And Your Honor, which is, which you should, he should have been provided with. And Your Honor, and we gave him a new trial. And you're up here. Your Honor, you gave him a stretch of that by invoking so-called extraordinary circumstances that would preclude a new trial. Your Honor, you gave him a new trial on the idea, and this is what a conditional writ is supposed to do, is give the Commonwealth of State an opportunity to correct the constitutional barriers. And the issue that you're raising about the conduct of the lawyers post-mandate of the Fourth Circuit might be pertinent to the new trial in some proceeding before the state court judge. But it has not been exhausted to such an extent that any issue under the Constitution could get into a federal court. Your Honor, I disagree with that. And the reason is, is because I don't think habeas process is supposed to be a circular, meaningless process. If it was different constitutional violations, then the unexhausted argument would make sense. If it was the fact that we had some claim about ineffective assistance of counsel, something different. But the problem with the Commonwealth's position here is that what they have done now is they have gone ahead and, as the district court said, crystallized the violation. So what's going to happen is that the state court will either find those constitutional violations to have occurred or not. It will go up on federal habeas again. Another district court will find that the same constitutional violations that occurred the first time have now occurred again. If you're so correct, I mean, and you've got confidence in your position, a state court of Virginia is just as capable of resolving those constitutional issues as we are. Your Honor, a state court is not as competent as this court. I'm sorry. Your Honor, let me finish. You could raise those constitutional issues in the state trial court. And if you lose them, you can raise them in the intermediate court or the Supreme Court of Virginia and the Supreme Court of the United States. Your Honor, I'm not disagreeing. Not everything that you say is constitutional has to come through here. Your Honor, I'm not disagreeing with you. But what I am saying is that the state court is not the same position as this court or the district court in enforcing the district court's order. Now, the one district court's order gets him a new trial. It gets him a new trial and grants him. All we intended to give him was a new trial. Your Honor, with respect, this court was not just giving him a new trial. It was giving him a new trial to correct the constitutional violations that occurred in the first trial. I understand, Your Honor, your point that if there are unexhausted claims, and that's why I'm saying it is important. You're saying the test all hooked back into that, but I'm telling you what. We found the Brady violation. And we directly be given a new trial. Your Honor, so we would like we would like a new trial where we would be able to use the Brady information in order to. That's a matter for the. That's a matter for the state court to decide what you can use in the new trial is for the state court. Your Honor, maybe you offer up maybe the court. We can't decide whether he's going to take the Fifth Amendment or not take the Fifth Amendment. I've had witnesses that told me they're going to take the Fifth Amendment and I put him on the witness stand and they testify for two or three days. They don't always do what they say and you put them on the witness stand and the judge gives them immunity and they testify for two or three days. So they do testify even though they don't want to testify. You know, I urge the court to look at two decisions and I like one one point about immunity. First, you should take a look at the D'Ambrosio case because in the D'Ambrosio case, a very similar circumstance happened where because of delay, not nowhere near the same misconduct as we have here, but because of delay, a vital witness, the key witness only to provide direct evidence against the petitioner died. In that case, I did look at that case. The condition was that the trial be conducted. I'm sorry, you're within the terms of the order were different. You're absolutely right. Your Honor, but I guess there's two issues here. There's one question, which is, did they violate the order? We think we're on solid grounds. The second question is, do extraordinary circumstances justify relief? And on the extraordinary circumstances, we think D'Ambrosio is very relevant. Don't you need both to get to the extraordinary circumstance? Well, Your Honor, we have to be. I'm not arguing. I'm really just asking. Absolutely, Your Honor. And we prevail on the violation of the order because one, they, they don't, they can't show that they've tried them within 120 days and they can't show they've unconditionally. But that's not what the order said. It said, provide him a trial within 120 days. There is no way that they have provided him a trial within 120 days. They've only initiated pretrial proceedings. Now, Your Honor, if you ultimately disagree with the district court, you ultimately disagree with what the state you disagree with us, then we, I agree. You don't get to extraordinary circumstances, but I believe that if you look at the case law and see what it is, you will realize that the only argument that the state actually thought that they were making below was the argument as to when the 120 days run. If you take a look at the court's orders, 120 days run from his order, and the state doesn't do anything to change that. So we prevail on the idea. There's a violation. And then the meat of this case, which I really do think, which is a difficult part of this case is whether there are extraordinary circumstances to justify barring reprosecution. We accept the fact that this only should happen in rare circumstances, but Your Honor, I will reject the idea that this does not occur. I think that the Gilliam case, the d'Ambrosio case, so a precedence where you can do this. And I also submit to the court that this is an extraordinary case, precisely because the entire context of the case, the fact of what happened at the habeas proceedings and the sloop finding extraordinary misconduct that occurred, and the fact that the Commonwealth has basically continued to thumb its nose at the district court. It isn't trying to correct these violations. It's trying to basically, as a district court said, crystallize them, which is preventing us on any retrial from actually having a fair trial. We will not be able to cross Mr. Barber. We are not in a position that neither is a district court. It doesn't seem to me to judge whether somebody is going to get a fair trial in a state court proceeding. I mean, that's really difficult. And the state of Virginia has a court system that's competent and good. They have great judges. They could accord somebody a fair trial, and they can hear appeals that even involve constitutional questions. Your Honor, I agree with you in all circumstances, but one. And the circumstance is this, is that if there are the same types of claims, the same violations that underscored, and the Commonwealth is not fixing them, but is going on and doing the same violations again, then this court has authority because it has to enforce the original order. Otherwise, the whole purpose of a conditional order is to give him a retrial. But Your Honor, you couldn't possibly have asked him to give a retrial for purposes of just committing the same constitutional violations, because if you did, the habeas process would make no sense. I mean, it would just be a. The constitutional violation was the Brady violation. The Brady. They're going to fix it, and these other issues you can raise. But Your Honor, they have prevented us from fixing it. And also, even though this court only affirmed on the Brady grounds, don't forget the district court made other findings that were not reversed on appeal, and those are entitled to respect. No prosecutor should be able to just go ahead and say, there's a district court order I don't like. I haven't been able to reverse it, so I'm just going to ignore it. So with your respect, Your Honor, I know that there is a problem in general with suggesting that district court should be barring reprosecution. But in this case, I really urge the court to look at what is happening in terms of a finding of false testimony, an attempt specifically, no matter how you characterize it, to induce the witness to testify falsely again, a finding of Brady material that we should be able to use to cross examine and show our own clients innocent that has now been taken away from us because he's unavailable. And Your Honor, How is he unavailable? You can call him as a witness. He's taken the Fifth Amendment. But he hasn't taken the Fifth Amendment. You can call a witness to the witness stand, and that's when you find out whether he's going to take the Fifth Amendment. And we've done that, Your Honor. They don't take the Fifth Amendment a year beforehand. And besides, this guy's testified under oath. If he's unavailable, there are avenues under the rules of evidence to use prior testimony. Okay, so Your Honor, I mean, there's a lot of options here. Your Honor, that a trial judge can look at. Your Honor, two points about those options. One is that we don't rule on trial evidence rules, Your Honor, particularly those for state court. Your Honor, we've already called him to the stand. He has taken the Fifth, and the state court has found that he has the Fifth. His own lawyer took the stand in the district court and said he will take the Fifth. Your Honor, it was their burden. That doesn't mean he's going to take the Fifth. Well, Your Honor, They can give him immunity. But Your Honor, they had a show court order. They could have come forward and given him immunity. They have not given him immunity. That bothers me about as much as anything in this case, is you're all taking that position. What position, Your Honor? The position that a witness whose lawyer is going to recommend to him they take the Fifth Amendment, his evidence is lost. That's not the way the system works. Your Honor, the system doesn't. If he had just done that on his own initiative, different world. The system does not work with state prosecutors that are deliberately putting witnesses in a position. And, Your Honor, you made the point, oh, you could read trial testimony. No, you cannot. Because, Your Honor, under the Sixth Amendment, we have a right to confront the witness with the Brady material. Well, the rules provide for it. The rules provide for it in the proper circumstances. And if he gets up there, you can cross-examine him from all of these various testimonies. And affidavits, he's given affidavits going both ways, as well as sworn testimony going both ways. This guy could be a lawyer's paradigm. Your Honor, the concern that we have with the way that your questions are suggesting, and we'd urge the Court to take a look at this again, is that I understand if there are other constitutional violations, that's for the state courts to proceed on. But in this particular case, given what has happened, it cannot be the case that the habeas process just leads to a circular process where the first habeas proceeding doesn't count for much. And that is why state prosecutors, just like anybody else, are required to comply with federal court orders. There was a habeas process. It has to mean something. And what we would suggest is that it means things in limited circumstances where, in the case of D'Ambrosio, where a key witness becomes unavailable because of state's misconduct. Here, because of extraordinary misconduct that's deliberately intended to affect the way that Barbara was to testify, pressure him to testify falsely in a way that the district court is bound to be false, and then prevent us from using the Brady material that this court said we should have been given in the first trial. You combine that in the broader context of the findings that the district court has actually made a sloop determination here. You actually put that in the context of the misconduct that occurred before, and this becomes a one-of-a-kind extraordinary case. And, Your Honor, I don't mean to minimize the court's concerns, but I do think that if you look at it through that lens, you realize there is no other case that meets the same extraordinary circumstances, but there are other cases with less extraordinary circumstances, less evidence of misconduct, where the court has granted relief. I thank the court for its time, unless you have any other questions. Thank you. Mr. Delegan? Excuse me, Your Honor. Ms. Parrish returned several times in his argument to an assertion that the state court can't make decisions in the trial because the commonwealth has not fixed or abided by the state court's order. There was nothing in this district court's order or this court's order that they were not to prepare for trial, that they were not to speak to Mr. Barber. There's certainly nothing that they were not to address with Mr. Barber over the fact that he faced perjury and questions of his breach. But there was also nothing in the district court's injunction other than speculation that they deliberately did anything to cause him to invoke his Fifth Amendment right. Didn't his client testify and say that the visit by the prosecutors was the reason he was now going to invoke his Fifth Amendment? The fact that they informed him that he might be subject to capital case if he testified in breach of his plea agreement with them? He testified that, well, he resisted testifying exactly what his reasons were, but he did state that one of the reasons was the fact that he faced re-prosecution. But he faced re-prosecution whether or not they told him that on September 11th or not. He faced re-prosecution as soon as he testified falsely and breached his plea agreement. Was Mr. Barber represented at his plea hearing? Yes. He had counsel through sentencing on the verdict. So the state now believes he breached his plea agreement? He breached his plea. At whatever point you believe Mr. Barber testified truthfully or falsely, he has testified both ways now. He either breached his plea agreement by testifying falsely at trial, as Judge Jackson believed, or by testifying falsely in a subsequent proceeding in front of Judge Jackson. He can't have testified truthfully in both proceedings. He has breached his plea agreement one way or another. I thought his plea agreement was to testify truthfully at trial. And at any subsequent proceedings consistent with a trial testimony. Did he say that? Yes. So whichever testimony is in fact the truth, he has breached his plea agreement. And he's committed at least statutory perjury by testifying opposite ways in two sworn proceedings, if not common law perjury. But these are all matters that are within the state court's competence to address and decide and control and regulate at trial. Nothing in the district court's order requires the state court to do anything specific with respect to Mr. Barber. It required that he get a new trial. The state court is presumed to follow the law and the Constitution. The prosecutor, as we've stated in pleadings and as reflected in the status report, has bent over backwards to make Brady disclosures in this case. There are something over 17,000 documents that have been turned over at this point. So if it's assumed that the state violated the district court's order to provide him with a new trial within 120 days, if we assume that, then where are we? Because you say that the district court can't bar prosecution because these circumstances weren't extraordinary enough. So what's the district court left with to enforce its order? It's left with what it said in its injunction, that it would find the violation, order him released from the unconstitutional custody subject to rearrest and retrial, but that's what the state has already done on February 7th. It could enter that order, but the state took the step as soon as the mandate was issued to give him that relief. He had the full relief that a simple writ without retrial conditions could have given him once the state honored the district court's order to vacate the convictions. So it would do nothing additional. A judge could, short of barring a retrial if it thought lawyers had acted bad enough, sanction him in some manner. I mean, there could be some sanctions imposed, perhaps, that are something less than barring a retrial. I was focusing on the case remedy, but yes. If somebody does something wrong in the presence of the court, the judge could do things about it that don't involve dismissing the case. Yes, Your Honor. Normally they don't punish a client for something necessarily that the lawyer does. Yes, Your Honor. I took Judge Thacker's question to be what could be done in crafting the writ, and I think the only thing the writ would provide for is that it's no longer a conditional writ, that it's a simple writ granting full habeas relief, release from the unconstitutional convictions, but the state's already done that, so it wouldn't add anything. He'd be subject to re-arrest and retrial, and that's where the state's trying to go now, is retry him on the indictments it re-arrested him on. So if the state has miscalculated the 120 days, and I'll just touch on that briefly. It's our position. I think the court understands that the 120 days has to run from the mandate. If it's exhausted before the appeal is even finished in this court, we're left with a kind of arbitrary residue of the 120 days depending on when the stay is entered, and the point of the stay was to give us the benefit of this court's opinion in order to do the retrial. The point of the stay we took was to give the Commonwealth the 120 days in order to provide a retrial. But the reading of the district court was that from the time of the stay you had, what, 34 days or 36 days? 36 days. Oddly, Your Honor, at the time of the hearing on the motion to enforce, the district court described it, the question of how to calculate the 120 days as uncharted territory that the court was going to have to deal with after the hearing and figure out how to get to it. So it wasn't clear at the hearing that the district court understood that the time was expired. If he said that, why didn't y'all go back after the mandate at some point and try to clarify it? Well, he said that at the... I know, but why didn't y'all go back and try to clarify it when there was obviously disagreement here, whether it was 36 days or 120 days from the time of the mandate, and nobody went back and asked the court at that point, you waited until after the fact. We didn't think it was ambiguous. And the prosecutor didn't think it was. Well, you went over there to the state court judge and told him you only had 36 days. Oh, Your Honor, may I have leave to finish? You didn't? When you got that October 15th trial date? I thought you did. May I have leave to answer? Pardon? May I have leave to answer? I see my time's expired. Oh, yeah, absolutely. The special prosecutor agreed to October 15th as the date that Mr. Wolf wanted. He didn't concede that he hadn't been released. He didn't concede that the 120 days ran that way. He agreed to a trial date to avoid the issue because it was convenient. I don't know why, but he simply agreed to a trial date. He didn't concede anything about the district court's order. He moved for continuance for routine reasons. There was additional investigation due. Some witnesses hadn't been located. There were deadlines for filing reports and so on. When Mr. Wolf brought up to the state court that on his reading it took, that was more than 120 days, the special prosecutor pointed out that it was less than 120 days from the mandate and it was set within that time. But his argument didn't concede that he hadn't been released or concede a reading of the district court's order that was urged by Mr. Wolf. It simply tried to set a trial date with as few legal issues being created as possible. Thank you very much, sir. We appreciate it. We appreciate the work of all the lawyers in this case. Thank you very much. We're going to come down and greet counsel and then we'll adjourn court until 9.30 tomorrow morning. This honorable court stays adjourned until tomorrow morning at 9.30. God save the United States and this honorable court.
judges: Robert B. King, Allyson K. Duncan, Stephanie D. Thacker